As you have probably noticed, there are only two of us on the bench this morning. Justice Cates is also on the panel due to circumstances beyond her control. She's not able to be with us today. She will, however, be a full participant in the conferencing of this case and its disposition. And that goes for all of the cases set on the docket today. With that, we'll start with the first case for oral argument. Friends of Murray Center Inc. v. Dept. of Human Services at all. Counsel, whenever you're ready, you may proceed. Good morning, Your Honors. I'm going to please the Court. My name is Brett Legner. I'm the Assistant Attorney General, and I represent the respondents of House in this matter. Your Honors, this Court has taken a motion with the case concerning jurisdiction. We have. I believe that my response and the briefs cover that. If this Court has no questions concerning that, I'd like to go straight into the merits of the matter. Fine. Okay. Your Honors, our first argument is that the petitioners of this case lack standing to bring the action. The General Assembly in the Probate Act has set forth a very thorough and specific statutory mechanism to deal with the issues of disabled adults and the Court's role in dealing with that situation. The General Assembly has provided specific statutory criteria for standing to bring an action under Section 23-2 of the statute, and petitioners now admit that that's what they are proceeding under. It's a proceeding under 23-2 to remove a guardian. That section states that an interested person may bring an action. The General Assembly has defined interested person, the term interested person, in Section 1-2.11 of the Probate Act, and that is a person who has or represents a financial interest, a property right, or has a fiduciary status. The General Assembly, with this narrow definition, has shown its intent to limit the scope of the class of people who can bring an action to remove a guardian, and it stands to reason the General Assembly wanted to make sure that somebody that is specifically interested in that matter is the only one who can bring a matter to remove a guardian because it interferes with judicial findings and a relationship, a very special relationship, between a guardian and a ward as the General Assembly has crafted it. Petitioners here exhibit none of the special specific indicia of being interested persons within the meaning of the status. The General Assembly provided some examples to explain the term, examples such as heirs, legatees, creditors, somebody entitled to a spousal award. Petitioners are metaphors. Petitioners are certainly well-meaning and concerned citizens, but that does not qualify them as an interested person within the meaning of the statute. Because the petitioners do not meet the definition of interested person under 23-2, they cannot bring an action under 23-2. They have failed to meet the specific statutory criteria for standing. Turning to my next argument, Your Honors, the circuit court had no authority to exercise jurisdiction over this matter and issue orders contrary to those of over a dozen other circuit courts throughout this state. Are you assuming that these orders are in conflict, or are you just taking this as a group, or are you looking at specific ones? What's the basis for that stance? Sure, Your Honor. And I'm talking about these as a group. That's often how much we have right now. But the reason for the argument is that in all of the cases throughout the state, the courts, the circuit courts, the probate courts, took evidence, held hearings, and exercised their discretion to appoint a guardian. Here, the plaintiffs admit that they are trying to remove that guardian. That would be contrary. That would be essentially asking the circuit court to include a guardian. Well, are they trying to remove the guardian, or according to the way I've read these orders, they're saying I'm appointing a guardian ad litem with a specific focus, and that is on the transfer. How does that interfere with, say, a guardian in St. Clair or Madison County who has the general broad scope of powers that a guardian would have? Well, transfer and placement is an important role of the guardian. I understand that, and there's no question about that. But how would a guardian appointed to focus on a specific issue as to these individuals conflict with – it seems like it doesn't inherently conflict with the powers of a guardian for all general purposes of someone who's in the situation. Well, Your Honor, the appointment of a primary guardian, again, as we've discussed, includes all the powers, including their important placement decisions. Taking one of those important powers away from that guardian – we have a circuit court that has said you shall be the guardian for all these things. Now we have a court, so the court in Madison County, which has said you shall be the guardian for all of these things. Now the court in Clair County has said, you know, you're not going to be the guardian for this specific person. That is a reduction of the power of the guardian appointed by the court in Madison County. That has been taken away. The court exercised its discretion in Madison County. It said you shall have the power to make these decisions. And we will exercise – we, the court of Madison County, the specific appropriate court, will exercise ongoing supervision over you. Now we have another court saying, you know what? That plenary grant of guardianship authority, I'm going to cut that back. I'm going to cut that back. Even though that other court exercised its discretion in giving the guardian those powers, I'm going to take away some of those powers. That is a conflict because the court, the original court that appointed the guardian, the plenary guardian, exercised its discretion and said you shall have the power to make these decisions. And now the Clinton County Court has taken that away. And I would add that this is especially true when it's the state guardian that has been appointed. And the reason for that, Your Honor, is Section 11A14.1 gives the state guardian or the public guardians powers over placement of the boards that other guardians do not necessarily have without a court order. But the state guardian doesn't need that. The state guardian, when the court appoints the state guardian, the court knows that the state guardian has these placement powers. For instance, the state guardian has the power to place a board at a large facility without court approval, without first seeking court approval. Those are specific powers guaranteed to a public guardian or a state guardian. So this reinforces the point that when the court appoints the state guardian to be the ward, it's appointing the state guardian as, I'm sorry, to be the guardian of a ward, it's appointing the state guardian with regard to everything including placement decisions, another court. The Clinton County Court has second-guessed that and said we're going to take that away. But the Clinton County Court didn't need to because there's a procedure provided by the General Assembly for interested parties or for that probate court to say, you know what, I'm going to alter the duties of the guardian or you're not doing your job or I want to put somebody of sin. But the General Assembly has provided for all of that to happen in the original probate court because that's the court that has the relationship in some of these cases up to 30 years with a specific ward that's been overseeing the guardian for decades, that has looked at the evidence, that's made credibility determinations. There's a process in place for that original probate court to do this if that's what is necessary. So basically what you're positing to this court is you've got these individuals, assuming they all have specific guardians appointed by a certain court somewhere. You've got the state guardian who has these overall plenary powers as to placement and you are saying as to those specific powers, the circuit court in Clinton County did not have the power to appoint a guardian and line them with the specific purpose for each of these 24 individuals to deal with placement only. And that's basically your argument? That is basically the argument, Your Honor. And I would add that each of these ones is the subject of a probate proceeding somewhere in which the court has appointed the state guardian. Would the specific guardians of these wards, in your opinion, be able individually to object to and block, not with their consent, to the transfer into the particular ward over which they are guardian and block the state guardian from making that transfer? Okay, Your Honor. I think maybe I was unclear. The state guardian does not have transfer or placement power over individuals who are not its wards. No, I understand. Okay. But you've got a guardian in St. Clair County. Yes. Appointed by the circuit court in Belleville. Mm-hmm. You've got the state guardian, and they've got power to transfer that specific person out. If the state guardian is the guardian of that specific person. If it's a private guardian, the state guardian does not have the power. And do all of these 24 have specific guardians? The state guardian is their guardian. Do they have specific guardians in any of the counties in Illinois? No, the state guardian was appointed in all those counties, all those specific counties. There are 13 counties appointed a state guardian as their guardian. And so then if that, if the state guardian is their guardian, what specifically in the statute would prohibit an individual being appointed as the guardian at Biden for this limited purpose in any individual county, including Clinton County? I'm going to give you, you posed your argument in terms of state authorization of particular actions. Yes. What in the statute would prohibit the appointment of the specific guardian at Biden for this specific purpose? By the Clinton County Court or by the original probate courts? By the Clinton County Court. That's the only issue. You know, that's the only issue before us. Sure. The closure is not before us. That's in front of the federal courts. Sure. Just for that specific limited purpose. The, I would say the entire, the entire structure of the probate act. In specific, I want to, I would call your attention to section 23-4 that says that if another court, if venue is proper in another court, the original probate court can transfer the matter there for the decision to be made. But the, but the, but the, the act as it gives the discretion to the original probate court to appoint a guardian also provides for an ongoing supervision over the guardian by the court. And that would be in regard to all matters. Now, this is combined with the cases that we signed, including the Illinois Supreme Court cases saying that we can't have, we do not want multiple circuits in this state issuing orders, conflicting orders or not on the same subject matter that erodes the integrity of the judiciary. We don't want one judge in one county second guessing another judge in another county that has already made decisions. And the way the probate act is set up, because the court exercises ongoing jurisdiction in probate matters, it has the jurisdiction to say, okay, I'm going to appoint a guardian ad litem for recommendations regarding transfer. The original probate court could do that. Now, this dovetails into the other, another point that there's a difference between a guardian ad litem and a guardian. A guardian ad litem is appointed to give, make recommendations to the court, and then the court then makes a decision. Here, while being denominated a guardian ad litem, the court really gave the so-called guardian ad litem guardian powers because it has given the guardian the veto power over the state guardian's placement decisions. The court retained veto power over the guardian's decision, though, right? The court could overrule the guardian ad litem's decision as to allowing or blocking transfer in any of the individual cases. Well, Your Honor, we tried that. No, I may have tried it, and it didn't work. But the power was there. It was discretion of the court as to whether they would allow that. Yes, and the court wouldn't exercise its discretion one way or the other, so. Right. So you're right overall, except that while the court does retain the ultimate veto power over both guardians, I guess, in this case, the problem is with the order and what really makes it injunctive is that the court didn't say guardian ad litem. You will report to me, and then I'll make the decision. The state guardian, you can't do anything unless the guardian ad litem consents. And that's a different structure. That's a different duty. That's a different power. That's a guardian, not a guardian ad litem. And, yes, I understand that the court retains overall power to veto or undo something a guardian does, and that's true always because the court can always exercise jurisdiction over a guardian. Right. So in all the 14 or 13 different probate courts across the state, the courts are exercising jurisdiction over the state guardian and can't supervise the state guardian. And if they think the state guardian is doing something that's going to endanger its wards, they can act. They can step in and act. Why, what would prohibit a circuit court in any of the counties in Illinois from reporting a specific guardian ad litem to supervise as to this particular activity, not dealing with the health decisions or financial decisions, but this particular question? I would, the first point is that this particular question merges in with financial and health decisions. Those are all things that are taken into consideration. That's why all that's in the writing. True. I'm not saying that the original probate courts can't appoint a guardian ad litem to give a recommendation. But again, those courts are the ones in relationship with the ward. Those courts are the ones that appointed a guardian, so those are the courts that could do that and exercise as part of their oversight of the guardians they appointed. As an aside, but to get us up to speed on the current state of the record. Yes. The federal injunction is still in effect as far as closure, is that correct, as of today's date? As of today's date, yes, Your Honor. There was a trial on the preliminary injunction, and the parties are briefing that right now. Are what, I'm sorry? They're briefing. There's a post-trial briefing practice going on now. Oh, okay. So the injunction is still in place. We're waiting for that. Right. And that's where the federal arm stands. There's currently 224 people residing at Murray Center. Your Honor, my last point is that a common theme throughout the petitioner's argument is that the state guardian is doing something untoward in this case. But I'd like to point out that the state guardian is presumed, as a state official, to be acting with integrity and is necessary to uphold the duties of the position. And in fact, the General Assembly recognized the state guardian would so do when, for instance, it gave the state guardian the power in Section 14.1 of the Probate Act that gives the state guardian specific powers because the state guardian has expertise in these matters. The state guardian has statewide machinery set up to deal with these matters. And that is an important or significant presumption for petitioners to overcome, even if they did have standing and even if it were proper for the Circuit Court of Clinton County to entertain jurisdiction over this matter. But again, 14 different circuit courts, 13 different circuit courts, numerous, 24 different circuit courts, specific circuit courts, circuit court judges, probate courts, have looked at the evidence, exercised their discretion, and appointed a particular guardian, that being the state guardian. The Circuit Court of Clinton County does not have the authority to unmask, second-guess, all of those decisions. The General Assembly created ongoing jurisdiction in those original courts to entertain these arguments. If your Honor does have no further questions... I don't believe we do. And I apologize for my gravely voiced opinion. No, no. We're all going through that this winter. Thank you very much. Counsel? Counsel, do the Friends have a standing in this case? Absolutely. That's what's happening right now. Your Honor, there's several different facets of the standing argument. The first being that Judge Becker didn't even need us to be here to enter the order that he did. The statute, which the AG's office fails to acknowledge, says that interested persons can intervene, or the court on its own motion can enter the order that it did. So I don't think it's a proper argument to suggest that Judge Becker somehow ordered, or there was an error based upon standing when he didn't need us standing here in order to enter the order. That said, I believe that petitioners are interested persons within the definition of the statute. Did the trial judge have his own motion at that time? It said the petition of any interested person are on the court's own motion. Did he specifically bring up his own motion? I don't believe so. But he could have. I could have gone and talked to him in the coffee shop and said, here's what's going on, and he could have done this on his own. In terms of standing, I believe that it's clear petitioners are interested persons, and while Mr. Legner said that an interested person is, you listed the enumerated examples, those are indeed examples. It's not an exhaustive list, and that's clear from the statute as well as the case law. So you need to look at who's an interested person on a case-by-case basis. You know, it's curious that the Office of State Guardian says that we're not interested persons and we can't be involved in guardianship proceedings in light of the public dissemination of information that they provide on guardianship. You know, they advocate and acknowledge that the Office of State Guardian is the guardian of last resort and that these people are alienated from their friends and family, and they want anyone involved who's ready, willing, and able. Yet whenever we believe they have a hidden agenda, they suddenly don't want people who they don't dispute are qualified to act as guardians involved. And in their literature, they even say the judge appoints a guardian regardless of relationship to the party. The judge appoints whoever is in the best position to look out for the best interests of the boards, and that's really what this whole thing comes down to is the best interests of the boards. What is their hidden agenda? Well, that gets into the substance of the pleadings, and I think that it's, well, I think they have a number of agendas, and the biggest is to get the Murray Center closed down as quickly as possible to carry out the governor's quote-unquote rebalancing initiative. And there's debate over whether it's a cost-saving measure or a political issue, what have you, but I don't think that that's necessarily for the court. Does that answer your question? It does. Okay. Going on, if you look at the common law superior rights doctrine, which has been codified within the Probate Act in terms of minors, what that says is that a parent is presumed to be ready, willing, and able to act as minor or a guardian of their minor. At the same time, if an even non-relative comes in and says, rebuts the presumption that the parent is ready, willing, and able to serve, the court can entertain having that guardian replaced. So in terms of interpreting who an arrested person should be considered as far as the Probate Act is pertaining to disabled persons, I think the superior rights doctrine is exactly what we're talking about here. We've rebutted any presumption that the Office of State Guardian is ready, willing, and able to carry out its duties as guardian of these 24 Office of State Guardian boards. You know, as a practical matter, this would just be an absolutely horrible precedent to say that people like petitioners don't have standing to be here in front of the court and before your honors. You know, and it goes back to the Office of State Guardian saying these people have no one else to advocate on behalf of themselves. They are alienated from their friends, families. They have no one else. How does – What about the – a basis of the state's argument is that they have general guardians. Aren't they in a position to be advocates for them? Not whenever they're dropping the ball, then, and that's what we're saying here is that they've dropped the ball. Now, whenever they're not fulfilling their duties as guardian, who's going to step in whenever they acknowledge that there's no one else in these people's lives who could ever do it? And some of these people that we're talking about here have the mental age of 18-month-old, have no ability to communicate whatsoever. So if we can't come in to the court and say there's abuse going on here, who is? And if there's no one else that can even speak out for these people, I think that you get into some really due process issues. Who can get before the court if the Office of State Guardian is dropping the ball and says, you know, we're not interested in coming into court and reporting on ourselves? How specifically are you alleging that they are dropping the ball? Oh, they're just willy-nilly consenting to transfer these wards to places that are, in some cases, uninhabitable. They're sending them to places that have inadequate staffing for the medical conditions that these severely developmentally disabled individuals have. They're failing miserably, and that's what's outlined in great detail in our petition and has been briefed extensively at the federal court level. And for purposes of this appeal, all those facts are deemed admitted because they didn't choose to even contest them at the state court level. In terms of the point on jurisdiction, the case of Coveley v. Matheny is on point. That was a case where the Fayette County Court appointed a guardian over a minor. The minor moves to Fulton County. The Fulton County Court replaces the guardian. And the appeals court said the Fulton County Court had the, quote, right to appoint a replacement guardian. It wasn't just that it wasn't an abuse of discretion. It's that the court actually had a right to appoint that replacement guardian. Well, are you claiming that this particular guardian ad litem appointed in Clinton County is a replacement guardian or a supplemental guardian as to a specific issue? I'm saying, and the order reads, temporary guardian ad litem. And there's two separate sections of the probate code, one dealing with temporary guardianship and one dealing with appointment of guardian ad litem. And the court appointed guardian ad litem freemen both, temporary guardian and guardian ad litem. And they're fundamentally different. Of course, the guardian ad litem is charged with going out and investigating and looking for what's in the best interest of the wards who he's appointed over. A temporary guardian, on the other hand, is given temporary guardianship to whatever degree the court prescribes to look out for the best interests of the wards involved. And the interest of anybody else under that statute is completely irrelevant. Well, but what I wanted to know is you've got a guardian appointed, say, in, you know, here in Jefferson County, and then Clinton County has appointed a guardian ad litem on this specific issue. Are you saying the Clinton County guardian is replacing the Jefferson County guardian or supplementing as to this issue with this Jefferson County guardian? Or what exactly is your position? If I understand what you're saying, the Office of State Guardian has been appointed as guardian over the wards all across the state. So the Clinton County court is merely telling the Office of State Guardian across the board that its plenary duties as guardian are limited and here's how. And that's exactly what the statute under Section 11A-4 says that it can do. It can give the temporary guardian any and all power that it chooses to that a plenary guardian would otherwise have. Now, Mr. Legner didn't address the Copley case in his opening, but their response in the briefing was, well, it's a 1913 case from the 3rd District and it's never been cited before. Well, it doesn't have any negative citing history either. It doesn't make a bad law that it hasn't been cited. And we are dealing with an awfully narrow issue that's difficult to get up on appeal. And frankly, going back to my motion to dismiss, the issue of appealing a decision, an interlocutory point, is not typically going to happen and I don't think it's proper here. So the fact that it hasn't been cited I don't think is a significant argument. If you look at the Crane v. Lucent Technologies case, which was a 5th District case written by Judge Mag back in 2000, in which Judge Hopkins and Judge Goldenberg both concurred, they said that even where there is another action pending in another jurisdiction where there's the same parties and the same interests involved, the judge is only subject to an abuse of discretion standard when deciding whether to dismiss that action. And there are a whole lot of considerations in terms of policy that they mentioned. I'm sorry to jump around a little bit, but I wanted to quote the Copley case because the equitable considerations are really what you need to look at here in terms of jurisdiction. And quoting Copley, So it's exact equitable considerations that Judge Becker raised. How do these 24 individuals get back to the courts of original jurisdiction? Like I said, some of these people have the mindset of an 18-month-old. They can't speak, let alone how do they get back to Cook County to the court of original jurisdiction, particularly when they're arguing that no one can speak on their behalf. So back to Crane and policy considerations. If Judge Becker says, okay, go file in every jurisdiction around the state, it's going to defeat all of the notions of equity and judicial economy that are discussed in Crane. And you would have multiple individual cases scattered throughout Illinois, multiple guardian-advised investigating the common issues, common claims involving Murray Center and these various CILAs that the wards are being sent to. Possible inconsistent results, which again, Judge Becker pointed out. You've got legal fees and costs. Unlikely that the wards can make it to the original court. All the while, the wards all reside in Clinton County now. Their medical records are there at Murray Center. And all the witnesses that the guardian-ad litem needs to speak with are at Murray Center or in the area in order to investigate what's in their best interest. So why as a practical matter would it make any sense to send the case up to Cook County and say, let the Cook County case court deal with it and they can point a guardian-ad litem and he can travel 250 miles down and deal with the issue? I think that the last point on the appeal that they raise is the scope of the temporary guardian-ad litem's duties. And again, they don't acknowledge that this is a temporary guardian-ad litem. They don't even raise the issue of section 11A-4, which says that the court has a right to subscribe any duties that it feels necessary to act in the best interest of the wards that would otherwise be the responsibility of the Office of State Guardian. The Office of State Guardian, again, their literature says that we have the same responsibilities of any other guardian. So there's nothing unique about this being the Office of State Guardian on the other side. Now, I wasn't completely clear on the argument that they made, but I believe that they were citing the fact that the Office of State Guardian, per statute, can appoint or can make residential placement decisions without further order of the court. Well, they're still subject to the same duties of a typical guardian. It doesn't mean that they have an unassailable right to do that. What they have is the same rights as any other guardian when challenged with section 11A. And under 11A, the court can subscribe whatever orders and duties it feels necessary and take away those from the Office of State Guardian. So you're relying on a supervisory authority, basically. I'm sorry? You're relying on a supervisory authority in the court. Well, yes. Okay. Yeah. I mean, it's expressly laid out in the statute. If I've missed any of the direct points on appeal, that was not my intent, and I rest upon the briefing. We've read all the briefs. You haven't waived anything. Neither of you waived anything. Okay. Thank you. And if I could, I'd like to address my motion to dismiss just briefly and explain that. What the Office of State Guardian and the other respondents don't want to acknowledge is that guardianship is different than an injunction. Guardianship proceedings are handled according to the language of the probate case. Injunctions are a whole different animal. You've got to meet various elements of immediate irreparable harm, likelihood of success on the merits, et cetera, et cetera, et cetera. Temporary guardian ad litem agreement was not appointed based upon meeting the elements of an injunction. He was appointed based upon the express authority provided under the probate code. So the significance is that an injunction is appealable, granted, under Rule 307. Appointment of a temporary guardian ad litem where there's been no final determination of the rights of any party is not appealable in an interlocutory manner. Now, what they want to do is try to bootstrap an appeal of the appointment of temporary guardian ad litem onto the injunction. And this simply – that's simply not an injunction. So I don't believe that there's any jurisdiction for the court to entertain kicking guardian ad litem agreement out. So the significance of that is that – so if the court goes on to look at the preliminary injunction, the two issues that they've raised in terms of the preliminary injunction are standing and jurisdiction. Even if the court were to agree with what they're trying to sell, that – it makes no difference. The status quo cannot change because if you say, all right, injunction dissolved, that was an error. There's still going to be a temporary guardian ad litem in place. He's still going to have the same authority on residential placement that he does pursuant to Section 11A-4. And the Office of State Guarding still can't transfer the wars. Nothing changes. So the status quo is going to stay the same. There's no relief that this court could grant that would afford effective relief. I appreciate your time, and my clients appreciate your time. Thank you. Thank you, Counsel. Counsel? A few points, Your Honor. Starting with the last point first. They asked for a preliminary injunction. They received a preliminary injunction. It just doesn't appoint a temporary guardian ad litem. It appoints a temporary guardian ad litem, makes that guardian ad litem a guardian, and restrains the state from doing something that it otherwise had the authority to do. That is an injunction. That's appeal law under 307A. They can't ask for an injunction, a preliminary injunction, and then try to insulate it from any appeal once they get it. Additionally, 11A-4, and the petitioners have gone back and forth between calling the guardian ad litem a temporary guardian or a temporary guardian ad litem. The order, the court's order only calls them a temporary guardian ad litem. It never calls them a temporary guardian. But if it was a temporary guardian under Section 11A-4 of the probate code, petitioners don't acknowledge that the temporary guardianship shall expire within 60 days. So it's over. So it's over unless it's extended, and it hasn't been. If a person's appointed as a guardian ad litem focused on a specific issue, given the 60 days, if that issue is not resolved within the 60 days, that guardianship doesn't expire, does it? The court may extend it. Okay. So by appointing this person as a guardian ad litem and the litem has not been resolved, it's extended as a practical matter, isn't it? I would say that's probably right. But, again, there's a difference between a guardian and a guardian ad litem. No, I understand that. Okay. But consistently, Judge Becker has appointed a guardian ad litem and so designates this individual. Right. Yes. I would agree with that. With regard to the standing issue, the appointment counsel made about the court on its own motion, Judge Becker did need petitioners standing before him to be able to entertain this action. Could you repeat that? Judge Becker did need petitioners standing before him to be able to entertain this action. The court can't file its own lawsuit and then rule on it. Judge Becker needed someone standing to bring this lawsuit up for him to rule. If a petitioner's counsel wants to have an ex parte communication at the coffee shop with Judge Becker, that's fine. But that is not authorized. The court can then start creating cases and entering orders that affect other circuit courts. Plus, the court never purported to be acting on its own motion. In this case, anyway, they simply do not meet the statutory criteria. It is true that the list of examples on the interest of persons definition in the statute is not exhaustive. The examples of what is exhaustive are the criteria, the three criteria, financial interest, property right, fiduciary status. Those are non-negotiable. And they don't have any of those. So they lack the standings. The Copley decision, Your Honor, is not, we're saying it's not precedential, not because it's over 100 years old and hasn't been cited. It's because it's an appellate court decision from 1913. It was issued before the Court of 1935, which made those decisions binding precedent. The Copley decision holds no water. But those decisions are persuasive authority as opposed to binding authority, isn't that correct? Yes, you could read them as persuasive authority. That's exactly right. But then you read the more recent jurisprudence that counsels against circuit courts exercising jurisdiction and issuing orders on the same subject matter that have happened decades after that. And that's the more recent jurisprudence, which is binding on this court, from the Supreme Court's decisions there especially. The Crane case, I would just like to point out, is distinguishable because that involved a conflict between a case in Illinois and a case in Alabama, a foreign jurisdiction. It did not involve the unique intrastate considerations that are discussed in the cases we cite where the Supreme Court has been specifically attuned to concerns about the integrity of the judiciary when you have multiple state circuit courts issuing conflicting orders. Finally, Your Honors, Section 1187 of the Probate Act provides the venue for where the original probate proceedings shall be brought. That entire statute discusses the court and the probate proceedings, meaning where the probate proceedings were initiated. That's where the court hears the evidence. If circumstances so change that another court is a proper venue to do the ongoing supervision provided in the act, 23-4 provides the mechanism to deal with that. Thank you very much for your time. Thank you, Your Honors. Did you have a question? No, it's good. We appreciate the briefs and arguments of counsel to take the case under advisement. Thank you.